UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DARLA ROWDEN,

                Plaintiff,

      v.                                                      Case No. 21-CV-700

KILOLO KIJAKAZI,
**Acting Commissioner of the Social Security Administration,**

                Defendant.

---

## DECISION AND ORDER

---

### 1. Introduction

Alleging she has been disabled since August 16, 2018 (Tr. 13), plaintiff Darla Rowden seeks supplemental security income and disability insurance benefits. After her application was denied initially (Tr. 13) and upon reconsideration (Tr. 13), a hearing was held before Administrative Law Judge (ALJ) Dean Syrjanen on October 27, 2020 (Tr. 13). On December 15, 2020, the ALJ issued a written decision concluding that Rowden was not disabled. (Tr. 24.) After the Appeals Council denied Rowden's request for review on April 1, 2021 (Tr. 1), Rowden filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Rowden "has not engaged in substantial gainful activity since August 16, 2018, the alleged onset date[.]" (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Rowden has the following severe impairments: degenerative disc disease status-post L3-5 laminectomy, obesity, status-post trigger release, migraines, depressive disorder, anxiety disorder, personality disorder, and post-traumatic stress disorder. (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20

C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Rowden "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Rowden has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations. She cannot perform climbing of ladders, ropes, or scaffolds. She [is] limited to occasional stooping, crouching, and climbing of ladders, ropes, or scaffolds.[1] She is limited to frequent handling and finger with her dominant right upper extremity. She is restricted from exposure to workplace hazards such as moving mechanical parts and unprotected heights. She is limited to simple, routine, and repetitive tasks and limited to low stress jobs, defined as those with no inflexible or fast

---

[1] The court notes that the ALJ's RFC determination contradicts itself. It states that Rowden "cannot perform climbing of ladders, ropes, or scaffolds" but that Rowden is also "limited to occasional … climbing of ladders, ropes, or scaffolds." However, that contradiction is not relevant to any of Rowden's arguments.

paced production requirements and involving only simple decision making and occasional changes in work setting.

(Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Rowden is unable to perform any past relevant work. (Tr. 22.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that there were jobs that Rowden could perform, including marker (Dictionary of Occupational Titles (DOT) Number 209.587-034); garment sorter (DOT Number 222.687-014); and checker I (DOT Number 222.687-010). (Tr. 23.) Therefore, Rowden was not disabled. (Tr. 24.)

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

Rowden argues that the ALJ erred in his evaluation of her migraines and in his evaluation of the opinions of two state psychological consultants and her treating licensed professional counselor.

**4.1. Migraines**

Rowden argues that the ALJ "erred in interpreting the evidence related to [her] migraines, and consequently failed to adequately account for the effect of her migraines with specific limitations in the RFC." (ECF No. 16 at 12.) She concedes that his "statements [about her migraines] are partially accurate," but maintains that "the timeline is inaccurate, and the references to improvement are not given proper context." (*Id.* at 13.) "Had the ALJ properly evaluated the evidence, that showed gradual worsening rather than improvement, it is foreseeable that he would have more specifically accounted for

Rowden's migraines in the RFC (such as including an attendance accommodation)." (*Id.* at 14.)

The Commissioner responds that the "ALJ reasonably accounted for [Rowden's] migraine [] symptoms." (ECF No. 23 at 1.) The Commissioner argues that "the ALJ was correct to note that [Rowden] did receive some improvement" from medication, and her argument that "she did not receive a tremendous amount of improvement with the medication" amounts to "nitpicking" and should be rejected. (*Id.* at 7.)

The ALJ found that Rowden's migraine symptoms had twice been improved by prescription medication: first in 2019 and then again in early 2020. (Tr. 21.) Rowden concedes that the "the ALJ's statements are partially accurate." (ECF No. 16 at 13.) Indeed, the record provides substantial evidence to support the ALJ's findings. (*See, e.g.*, Tr. 3197.)

Nevertheless, the fact that Rowden's symptoms improved does not, without more, support a finding that Rowden "is capable of full-time work or that her statements regarding the severity of her symptoms are not credible." *See Herron v. Colvin*, No. 14-CV-56, 2014 WL 6607179, at *7 (E.D. Wis. Nov. 19, 2014). The ALJ erred both in failing to explain how Rowden's improved migraine symptoms informed his conclusion that Rowden's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," and in seemingly relying on Rowden's improvements to draw that conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121

(7th Cir. 2014) (an ALJ's decision must reflect a logical bridge from the evidence to his conclusions).

But it is unnecessary to remand a case if the court "can predict with great confidence that the result on remand would be the same." *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Rowden suggests that the ALJ should have included "an attendance accommodation" in his RFC finding to account for Rowden's migraines. (*See* ECF No. 16 at 14.) Rowden does not cite to any evidence in the record suggesting that her migraines would cause her to miss time at work. *Cf. Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Indeed, Dr. Patrick Belson, a state-agency reviewing physician, was the only physician to comment on how Rowden's migraines may influence her ability to work: he noted that Rowden's history of migraine headaches was such that she should "avoid concentrated exposure to unprotected [heights and hazards]." (*See* Tr. 2564.) And the ALJ incorporated Belson's restrictions in his RFC finding. (*See* Tr. 18, 21.) In all, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand to accommodate Rowden's migraines. *Cf. Jozefyk*, 923 F.3d at 498. Therefore, any error that the ALJ may have made in relying on Rowden's improved migraine symptoms or in failing to explain that reliance was harmless.

### 4.2. The Opinions of the State Psychological Consultants and of Rowden's Treating Licensed Professional Counselor

Rowden argues that the "ALJ improperly disregarded portions of the state agency psychological consultants' opinions, as well as the opinion of [her] treatment provider in

formulating an RFC." (ECF No. 16 at 14.) She points out that "[b]oth state agency consultants, and [her] treatment provider, found that [she] would have issues with maintaining regular attendance." (*Id.* (internal citations omitted).) "As the ALJ did not include accommodations for absenteeism, despite those accommodations being warranted, the ALJ committed a material error." (*Id.* at 15.)

The Commissioner responds that "[s]ubstantial evidence support[s] the ALJ's mental RFC assessment," including the "findings of state-agency psychological consultant Dr. Barthell." (ECF No. 23 at 8.) Indeed, the ALJ "more than accommodated Dr. Barthell's conclusion" that Rowden be restricted to simple work by "low-stress jobs." (*Id.* at 10.) The ALJ also reasonably explained why he found Mr. Catalan's opinion that Rowden would miss about four workdays per month only minimally persuasive. (*Id.* at 12.)

The ALJ limited Rowden to "simple, routine, and repetitive tasks" and "low stress jobs" "with no inflexible or fast paced production requirements and involving only simple decision making and occasional changes in work setting." (Tr. 18.) He explained that he imposed those limitations "in consideration of her depressive disorder, anxiety disorder, personality disorder, and post-traumatic stress disorder." (Tr. 22.) He also explained that, in imposing those limitations, he considered the opinions of two state agency psychological consultants, Kyla Holly and Robert Barthell, and the opinion of Walter Catalan, a licensed professional counselor who had treated Rowden. (Tr. 21-22.)

### 4.2.1. State Agency Psychological Consultants Holly and Barthell

In October 2019 Holly concluded that Rowden "demonstrated moderate limitations related to processing detailed instructions, maintaining extended attention and concentration, maintaining regular attendance, completing a normal workday, interacting appropriately with supervisors, coworkers, and the public, and responding appropriately to changes in work setting, and setting realistic goals." (Tr. 21-22; *see also* Tr. 73-77.) She noted that Rowden would "have occasional difficulties maintaining concentration and a typical schedule due to her depression, anxiety, PTSD, and borderline personality disorder." (Tr. 75.)

In May 2020 Barthell concluded that Rowden demonstrated "noted moderate limitations related to processing detailed instructions, maintaining extended attention and concentration, maintaining regular attendance, completing a normal workday, and responding appropriately to changes in work setting." (Tr. 22; *see also* 2556-58.) He noted that "[o]ver the past year [Rowden] has done quite well from a mental health standpoint. Meds and [dialectical behavior therapy] are very effective. Her mood is generally good and her anxiety is under good control." (Tr. 2254.) He concluded that Rowden has "some physical and mental health issues, but based on the total evidence she is able to function adequately" and that she "is able to meet the basic mental demands for unskilled work." (Tr. 2554.)

As Rowden points out, both consultants opined that she demonstrated a moderate limitation in maintaining regular attendance. (ECF No. 16 at 14-15.) "A 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair' … 'fair' in ordinary usage does not mean 'bad' or 'inadequate.'" *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (internal citations omitted). Thus, Rowden's ability to maintain regular attendance is, according to Holly and Barthell, fair. That conclusion is supported by their narrative explanations: Holly noted that Rowden would "have *occasional* difficulties maintaining a … typical schedule," and Barthell noted that Rowden has "some [] mental health issues, but … is able to function adequately."

That conclusion is also supported by other evidence in the record. For example, Rowden leaves her home daily, has no difficulty shopping, and engages in social activities like playing games and singing karaoke "approximately once a week." (Tr. 249-51; *see also* Tr. 2554 ("She has been able to keep socially active with friends by going out drinking. … She gets together with friends once a week and plays games or sings karaoke.").) That she completes these activities and does so consistently suggests that Rowden's symptoms are not so unpredictable that she cannot maintain regular attendance in the workplace. *Cf. Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of his impairments was credible or exaggerated.'" (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016))).

Moreover, the record also suggests that Rowden's symptoms are improving. (*See, e.g.*, Tr. 3243 (noting that as of September 30, 2020, her depression was in remission); Tr. 2554 (noting that as of May 2020 she "has done quite well from a mental health standpoint).) Taken with other evidence in the record—like consultants Holly's and Barthell's opinions and Rowden's daily and social activities—Rowden's improvement suggests that she can maintain regular attendance in the workplace. *Compare with Herron*, 2014 WL 6607179, at *7 (improvement in symptoms "alone does not suggest the absence of a disability").

Nevertheless, Rowden maintains that the ALJ failed to account for her fair ability to maintain regular attendance in his RFC determination. (ECF No. 16 at 14.) But that is not the case: the ALJ incorporated that limitation in his RFC determination by limiting her to jobs with no inflexible requirements. (*See* Tr. 18); *see also Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (concluding that the ALJ accounted for the claimant's moderate mental limitations by limiting the claimant to low stress jobs). Therefore, for the reasons explained above, the ALJ did no err in his consideration of consultants Holly's and Barthell's opinions.

### 4.2.2. Licensed Professional Counselor Catalan

Rowden points out that Catalan found that she "has a propensity to be absent from work." (ECF No. 24 at 4.) Indeed, Catalan opined that Rowden would be absent four days of work per month. (Tr. 22; *see also* Tr. 3245.) He also opined that Rowden "demonstrated

11
Case 2:21-cv-00700-WED    Filed 04/20/22    Page 11 of 14    Document 25

serious limitations related to maintaining regular attendance, completing a normal workday, performing at a consistent pace, interacting with supervisors, and responding to changes in work setting." (Tr. 22; *see also* Tr. 3244.) At the same time, he found that Rowden "demonstrated a global assessment of functioning (GAF) of 80, consistent with minimal functional limitations." (Tr. 22; *see also* Tr. 3243.)

The ALJ found Catalan's opinion minimally persuasive because he found "little evidence of that level of mental limitation," and because he found Catalan's "functional assessment internally inconsistent with his GAF determination." (Tr. 22.)

The ALJ must assess a medical opinion in terms of its persuasiveness, paying particular attention to how well the expert supports his opinion, how consistent the opinion is with the record, the expert's relationship with the claimant, the expert's specialization and expertise, and any other particularly relevant factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Although the ALJ must consider all of these factors, he need only explain how he considered supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

While the ALJ did not use the words "supportability" or "consistency," he addressed both supportability and consistency in his decision. For example, he concluded that Catalan's opinion was not well supported because it was internally inconsistent. *Cf. Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion … or when the treating physician's opinion is internally

inconsistent.") He also concluded that Catalan's opinion was inconsistent with Rowden's records, which "regularly note [her] euthymic mood, proper orientation, and intact cognitive findings in 2018 and 2019." (Tr. 22.) Therefore, the ALJ sufficiently explained why he found Catalan's opinion minimally persuasive.

Because this court's review is deferential, it is not the court's role to "nit-pick the ALJ's decision to determine if every reason given independently supports finding a treating source's opinion to be unpersuasive." *Roche v. Kijakazi*, No. 20-CV-556, 2021 WL 3030649, at *4 (E.D. Wis. July 19, 2021). Consequently, remand on this basis is not warranted.

5. Conclusion

In all, the ALJ's mental RFC determination was supported by substantial evidence. That evidence includes Holly's, Barthell's and, to an extent, Catalan's opinions. Indeed, the ALJ noted that, while he did not find Catalan's opinion persuasive, Catalan's "functional findings are largely accounted for in the residual functional capacity determination made herein." (Tr. 22.) It also includes evidence that Rowden consistently completes daily activities and consistently engages in social activities, and evidence that Rowden's mental symptoms have improved with treatment.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of April, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge